1  LIONEL Z. GLANCY (134180)
   MICHAEL M. GOLDBERG (188669)
2  MARC L. GODINO (182689)
   GLANCY BINKOW & GOLDBERG LLP
3  1925 Century Park East, Suite 2100
   Los Angeles, CA 90067
4  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
5  E-mail: info@glancylaw.com

6  *Attorneys for Plaintiff Kelly Ree*

7

8                UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 KELLY REE, on Behalf of Herself and All )   Case No.
   Other Persons Similarly Situated,       )
12                                          )   **CLASS ACTION COMPLAINT**
                                            )   **FOR DAMAGES, EQUITABLE,**
13                    Plaintiff,            )   **DECLARATORY AND**
                                            )   **INJUNCTIVE RELIEF**
14            v.                            )
                                            )
15 PEPSICO, INC.,                           )
                                            )   **JURY TRIAL DEMANDED**
16                    Defendant.            )
                                            )
17                                          )
                                            )
18                                          )

19

20

21

22

23

24

25

26

27

28

Plaintiff Kelly Ree ("Plaintiff"), by her attorneys, alleges upon personal knowledge as to her own acts, and as to all other matters upon information and belief based upon, *inter alia,* the investigation made by and through her attorneys.

## **INTRODUCTION**

1.    Plaintiff brings this consumer class action on behalf of herself and those who purchased Pepsi One (also referred to as the "Product"), which is manufactured and sold by PepsiCo, Inc. ("Defendant," "PepsiCo," or the "Company"), during the relevant time period (the "Class").

2.    Plaintiff and the Class have been harmed by PepsiCo's mislabeling and improper marketing of Pepsi One.  In particular, and as alleged in greater detail below, while PepsiCo touts Pepsi One as follows - "Full Flavor and One Calorie are now living in complete harmony inside Pepsi One – the drink that unites the taste of regular cola with all the things you like about diet cola"[1]  -   the Company has failed to disclose that the Product contains the carcinogen 4-methylimidazole ("4-MeI") which has been on California's Proposition 65 list of "Chemicals Known to the State to Cause Cancer or Reproductive Toxicity" since January 7, 2011.[2]  *See, e.g.,* California Health & Safety Code § 25249.5, *et seq.*

3.    Moreover, as evidenced by a recent article in *Consumer Reports*, dated February 10, 2014, and titled, "Caramel color: The health risk that may be in your soda," one can of Pepsi One contains the toxin 4-MeI at levels which are in excess of California Proposition 65 guidelines of 29 micrograms per day.

4.    In light of the foregoing, on behalf of herself individually and on behalf of all others similarly situated, Plaintiff alleges statutory violations of the Unfair

---

[1]http://www.pepsicobeveragefacts.com/infobyproduct.php?prod_type=1026&prod_catg_id=1062&brand_fam_id=1051&brand_id=1000&product=Pepsi+One

[2] http://www.oehha.ca.gov/prop65/prop65_list/Newlist.html.

Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL" or "Section 17200"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL" or "Section 17500"), the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"), and common law claims for breach of express warranty, breach of contract, intentional misrepresentation, negligent misrepresentation, and unjust enrichment.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interests and costs, and this matter is a class action in which Class members are citizens of a different state than that of Defendant. As such, the amount in controversy exceeds the jurisdictional minimum of this Court.

6.     Further, this Court has jurisdiction over PepsiCo because Defendant does sufficient business in California, has sufficient minimum contacts with California or otherwise intentionally avails itself of the markets within California through sales and marketing to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant's acts occurred in this Judicial District. Moreover, the misconduct at issue had effects in this County. Venue is also proper in this County because Plaintiff resides in Orange County, and Defendant conducts business within this County.

## THE PARTIES

8.     Plaintiff purchased the Product in July 2012, and was damaged by Defendant's mislabeling and improper marketing of Pepsi One as alleged herein. Plaintiff is currently a citizen and resident of Orange County, California, and has purchased Pepsi One for personal consumer use during the relevant time period. Moreover, Plaintiff read the label for the Product which did not contain a Proposition

65 warning and did not disclose the presence of 4-MeI, a carcinogen which has been on California's Proposition 65 list of "Chemicals Known to the State to Cause Cancer or Reproductive Toxicity" since January 7, 2011. The absence of such disclosures was a material and substantial factor which influenced her decision to purchase Pepsi One. In fact, Plaintiff would not have purchased the Product had she known that it contained 4-MeI well in excess of Proposition 65 guidelines. As such, Plaintiff suffered injury in fact and lost money as a result of Defendant's practices.

9.    Defendant PepsiCo is incorporated in North Carolina with principal executive offices located at 700 Anderson Hill Road, Purchase, New York 10577. According to the Company's website, Pepsi began in 1965 with the merger of Pepsi-Cola and Frito-Lay. Today, PepsiCo "is one of the world's leading food and beverage companies with over $65 billion in net revenue in 2012 and a global portfolio of diverse and beloved brands." *See* http://www.pepsico.com/Company. Moreover, on the Company website it notes: "We believe that acting ethically and responsibly is not only the right thing to do, but also the right thing to do for our business." *Id.*; *see also* http://www.pepsico.com/Purpose/Our-Mission-and-Values ("[I]n everything we do, we strive for honesty, fairness and integrity."; "Our Values & Philosophy are a reflection of the socially and environmentally responsible company we aspire to be. They are the foundation for every business decision we make."; "Responsibility and trust form the foundation for healthy growth. We hold ourselves both personally and corporately accountable for everything we do.").

## CLASS ACTION ALLEGATIONS

10.    Plaintiff brings this lawsuit, both individually and as a class action on behalf of similarly situated consumers of Pepsi One pursuant to Federal Rules of Civil Procedure 23(a) and (b). The proposed Class is initially defined as:

> All individuals in the State of California who purchased one or more cans of Pepsi One from January 7, 2012 until the present. Excluded from the proposed Class is Defendant, its respective officers,

3

directors, and employees, and any entity that has a controlling interest in Defendant. Plaintiff reserves the right to amend the Class definition as necessary.[3]

11. **Numerosity**: Upon information and belief, the Class comprises at least thousands of consumers and is so numerous that joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiff reasonably believes that there may be tens of thousands of Class members.

12. **Common Questions of Law and Fact Predominate:** There are questions of law and fact common to the Class, which predominate over any individual issues, including, but not limited to:

(A)   Whether Defendant engaged in the conduct alleged herein;

(B)   Whether Defendant's practices were deceptive, unfair, improper and/or misleading;

(C)   Whether Defendant made intentional omissions and/or misrepresentations;

(D)   Whether Defendant made negligent omissions and/or misrepresentations;

(E)   Whether Defendant's conduct as alleged herein constitutes and resulted in breach of contract;

(F)   Whether Defendant's conduct as alleged herein constitutes and resulted in unjust enrichment;

(G)   Whether Defendant's conduct as alleged herein violated the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

---

[3] While 4-MeI was included on California's Proposition 65 list of "Chemicals Known to the State to Cause Cancer or Reproductive Toxicity" on January 7, 2011, it was not until January 7, 2012, which is one year after it was listed, that it became subject to the clear and reasonable warning requirement regarding cancer causing chemicals pursuant to Health & Safety Code § 25249.10(b).

**CLASS ACTION COMPLAINT**

(H)   Whether Defendant's conduct as alleged herein violated the FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

(I)   Whether Defendant's conduct as alleged herein violated the CLRA, Cal. Civ. Code §§ 1750, *et seq.*;

(J)   Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(K)   Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

13.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning their products and purchased the products based on those representations.

14.   **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interest of the Class.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation.  Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.

15.   **Superiority of the Class Action**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual

5

litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

16.    Unless a class is certified, Defendant will retain monies it took from Plaintiff and the proposed Class by means of its unlawful conduct.   Unless an injunction is issued, Defendant will continue to commit the alleged violations, and the members of the Class and the general public will continue to be misled.

## FACTUAL ALLEGATIONS

17.    The soda marketplace is a multi-billion dollar industry.  Moreover, well aware that consumers in recent years are trying to lead a healthier and more calorie conscious lifestyle, companies like PepsiCo have aggressively tapped into these market segments.  For example, Defendant promoted its Pepsi One product line as having just one calorie and has vigorously marketed it as such.

18.    However, during the relevant time period, PepsiCo failed to disclose to the consuming public that its Product contains the toxin 4-MeI which has been on California's Proposition 65 list of "Chemicals Known to the State to Cause Cancer or Reproductive Toxicity" since January 7, 2011.  Moreover, PepsiCo has failed to disclose that Pepsi One contains levels of 4-MeI which are in excess of Proposition 65 guidelines.  California's Office of Environmental Health Hazard Assessment ("OEHHA") describes 4-MeI as *"a compound used to make certain*

6

*pharmaceuticals, photographic chemicals, dyes and pigments, cleaning and agricultural chemicals, and rubber products."*[4]

19.    As reported in a *Consumer Reports* article, dated February 10, 2014, and titled, "Caramel color: The health risk that may be in your soda," the article states in pertinent part:

It's the most common coloring in foods and drinks – and it can contain a potential carcinogen.  Here's what Consumer Reports found when it tested soft drinks that have caramel color.

Caramel color, added to many soft drinks and some foods to turn them brown, may sound harmless, even appetizing. But in no way does it resemble real caramel. ***Some types of this artificial coloring contain a potentially carcinogenic chemical called 4-methylimidazole (4-MeI). Under California's Proposition 65 law, any food or beverage sold in the state that exposes consumers to more than 29 micrograms of 4-MeI per day is supposed to carry a health-warning label.*** In recent Consumer Reports' tests, each of the 12-ounce samples of Pepsi One and Malta Goya had more than 29 micrograms per can or bottle. While we cannot say that this violates California's Prop 65, we believe that these levels are too high, and we have asked the California Attorney General to investigate.

Caramel color is the single most used food coloring in the world, according to a 2013 report from market research firms Mintel and Leatherhead Food Research. ***"There's no reason why consumers should be exposed to an avoidable and unnecessary risk that can stem from coloring food brown,"*** says Urvashi Rangan, Ph.D., toxicologist and executive director of Consumer Reports' Food Safety & Sustainability Center. ***"Manufacturers have lower 4-MeI alternatives available to them. Ideally there would be no 4-MeI in food."***

**The risks**
***In 2007, a federal government study concluded that 4-MeI caused cancer in mice and the International Agency for Research on Cancer determined the chemical to be "possibly carcinogenic to humans" in 2011.*** There's no federal limit for levels of 4-MeI in foods and beverages, but ***as of January 7, 2012 California requires manufacturers to label a product sold in the state with a cancer warning if it exposes consumers to more than 29 micrograms of 4-MeI per day.*** In this case, the exposure comes from consumption.

The California Office of Environmental Health Hazard Assessment used 29 micrograms as the cut off point because that's the level they determined poses a one in 100,000 risk of cancer—that is, no more than one excess

---

[4] At all times, emphasis is added unless otherwise indicated.

**CLASS ACTION COMPLAINT**

cancer case per 100,000 people who are exposed to that amount daily for a lifetime.

Consumer Reports' experts think even that risk is too high. ***"It's possible to get more than 29 micrograms of 4-MeI in one can of some of the drinks we tested. And even if your choice of soft drink contains half that amount, many people have more than one can per day,"*** says Rangan.  "Given that coloring is deliberately added to foods, the amount of 4-MeI in them should pose a negligible risk, which is defined as no more than one excess cancer case in 1 million people."  ***To meet that risk level, Consumer Reports' experts say a soft drink would need to contain about 3 micrograms or less per can.***

*****

**What we found**
While our study was not large enough to recommend one brand over another, both rounds of testing found that ***the level of 4-MeI in the samples of Pepsi One and Malta Goya purchased in both locations exceeded 29 micrograms per can or bottle.*** The products we purchased in California did not have a cancer-risk warning label.

*****

Consumer Reports says there is analysis of government data that shows higher levels of daily consumption of soft drinks generally. "No matter how much consumers drink they don't expect their beverages to have a potential carcinogen in them. And we don't think 4-MeI should be in foods at all. Our tests of Coke samples show that it is possible to get to much lower levels," says Rangan.

20.    The information in this *Consumer Reports* article concerning excessive levels of 4-MeI found in Pepsi One was also disseminated through numerous other news sources such as *CNN* and *FoxNews*.  Moreover, in an article titled, "Pepsi One contains higher levels of potential carcinogen, report says," the *Los Angeles Times* highlighted that: ***"Twelve ounce cans of Pepsi One, a low-calorie soda, contained as much as 43.5 micrograms of 4-MeI in California tests."***

21.    As a result of Defendant's material omissions in this regard, PepsiCo has been able to sell its Pepsi One product at a premium to the consuming public, and has also been able to sell more units than it otherwise would.  Moreover, it has done so without revealing that levels of 4-Mel are contained in its Product and exceed California safety levels under Proposition 65.

8

22.     In light of the foregoing, Defendant's failure to disclose that Pepsi One contains 4-Mel at levels which exceed California's Proposition 65 safety standards is false and misleading on its face.

## FIRST CAUSE OF ACTION

### (Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

23.     Plaintiff, on behalf of herself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

24.     The UCL defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business or practice.  Cal. Bus. & Prof. Code §§ 17200, *et seq*.  Unfair competition also includes "unfair, deceptive, untrue or misleading advertising."   The UCL also provides for injunctive relief and restitution for violations.

25.     Defendant committed acts of unfair competition, as defined by Cal. Bus. & Prof. Code § 17200, by falsely labeling Pepsi One.

26.     Defendant's conduct is unlawful because it violates the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* as alleged herein; the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* as alleged herein; Proposition 65 and other State and Federal laws.

27.     Defendant's conduct is unfair in that the harm to Plaintiff and the Class arising from it outweighs the utility, if any, of those practices, and because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and Class members.  Defendant's actions also violate the spirit of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; Proposition 65 and other State and Federal laws.

28. Defendant's conduct was fraudulent and likely to deceive reasonable consumers in that Defendant omitted and/or failed to disclose material facts regarding the Product, and specifically the excessive levels of 4-MeI contained in Pepsi One. Defendant's failure to disclose the true contents of its Product deception by omission. Defendant had a duty to disclose these material facts.

29. The facts concealed and omitted are material facts in that a reasonable consumer would have considered them important in deciding whether or not to purchase the Product.

30. As a result of Defendant's practices, Plaintiff suffered injury in fact and lost money as a direct and proximate result of the acts and practices alleged above, pursuant to Cal. Bus. & Prof. Code § 17203. Plaintiff, on behalf of herself and all others similarly situated, seeks: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices, including, but not limited to, disgorgement of all profits derived from the sale of the Product; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia,* Cal. Code of Civ. Proc. § 1021.5.

## <u>SECOND CAUSE OF ACTION</u>

### (Violations of Consumers Legal Remedies Act,
### Cal. Civ. Code §§ 1750, *et seq.*)

31. Plaintiff, on behalf of herself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

32. At all relevant times, Plaintiff and each proposed Class member was a "consumer," as that term is defined in Cal. Civ. Code § 1761(d).

33. At all relevant times, the Pepsi One constituted "goods," as that term is defined in Cal. Civ. Code § 1761(a).

34.     At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(c).

35.     At all relevant times, Plaintiff and each proposed Class Member's purchase of Pepsi One constituted a "transaction," as that term is defined in Cal. Civ. Code § 1761(e).

36.     Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that Pepsi One has characteristics, ingredients, uses and benefits which it did not have, in violation of §1770(a)(5) of the CLRA.

37.     Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that Pepsi One was of a particular standard, quality, or grade, when it was of another, in violation of § 1770(a)(7) of the CLRA.

38.     Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant advertised Pepsi One with the intent not to sell it as advertised, in violation of § 1770(a)(9) of the CLRA.

39.     Plaintiff will comply with Cal. Civ. Code § 1782(a) by serving a written letter on Defendant notifying it of the CLRA violations alleged herein.  If Defendant has not rectified the issues complained of herein as set forth in the CLRA notice, Plaintiff will amend this complaint to seek monetary relief, including restitution and damages under the CLRA.  At this time, Plaintiff seeks an Order requiring Defendant to cease the acts of unfair competition alleged herein.

## THIRD CAUSE OF ACTION

### (Violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

40.     Plaintiff, on behalf of herself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

41.     Defendant disseminated untrue or misleading advertising in the public domain in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by failing to disclose

11

1 that Pepsi One contained the toxin 4-MeI at levels which exceed those guidelines
2 listed in Proposition 65.

3     42.    Defendant committed such violations of the False Advertising Law with
4 actual knowledge or knowledge fairly implied on the basis of objective
5 circumstances.

6     43.    Plaintiff reasonably relied on Defendant's representations and/or
7 omissions made in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

8     44.    As a result of Defendant's violations, Plaintiff suffered injury in fact and
9 lost money.

10     45.    Plaintiff, on behalf of herself and all others similarly situated, seeks: (a)
11 an Order requiring Defendant to cease the acts of unfair competition alleged herein;
12 (b) full restitution of all monies paid to Defendant as a result of its deceptive
13 practices, including, but not limited to, disgorgement of all profits derived from the
14 sale of the Product; (c) interest at the highest rate allowable by law; and (d) the
15 payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia,* Cal. Code Civ.
16 Proc. § 1021.5.

17 <u>**FOURTH CAUSE OF ACTION**</u>

18 **(Breach of Contract)**

19     46.    Plaintiff, on behalf of herself and on behalf of all others similarly
20 situated, realleges and incorporates herein by reference each of the foregoing
21 paragraphs.

22     47.    Plaintiff and the members of the Class entered into a contract with
23 Defendant through the purchase of Pepsi One.

24     48.    Implied in the contract between customers and Defendant was that the
25 Product was labeled accurately and properly.

26     49.    Defendant breached these contracts by failing to disclose the true
27 contents of the Product and/or selling the mislabeled Product.

28

**CLASS ACTION COMPLAINT**

50.     As a direct and proximate result of Defendant's breaches of contract, Plaintiff and Class Members have been damaged in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Intentional Misrepresentation)

51.     Plaintiff, on behalf of herself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

52.     During the relevant time period, Defendant represented to Plaintiff and Class members that Pepsi One was safe for consumption.  These representations were contained in Defendant's advertising, on its website, and on the labels of the Product. The representations that were made to Class members were substantially similar for the purposes of this litigation.

53.     However, Defendant failed to disclose that Pepsi One contains excessive levels of 4-MeI in violation of Proposition 65.     Therefore, Defendant's representations were false.  The true facts are that the Product contains the toxin 4-MeI at levels which violate Proposition 65.

54.     When Defendant made the subject representations, it knew they were false, and made the representations with the intent to deceive and defraud Plaintiff and Class members to induce them to act in reliance on those representations, or with the expectation that they would so act.  The purpose of representing that the Product was safe for consumption was to deceive Plaintiff and Class members into purchasing Pepsi One.  Defendant knew that if it informed the public of the true facts no one would consume the Product, nor would it have been permitted for sale.

55.     Plaintiff and Class members, at the time the representations were made by Defendant, and at the time they took the actions herein alleged, were ignorant of the falsity of the representations and believed them to be true.  In reliance on these representations, Plaintiff and Class members were induced to purchase the Product

1   and consume it.  Had Plaintiff and Class members known the actual facts, they would

2   not have taken such action.  Reliance on Defendant's representations was justified

3   because it was offering the Product through reputable retail establishments

4   throughout the Country.  Plaintiff and Class members had no reason to believe that

5   Defendant would act otherwise than as represented in its advertising.

6       56.    In the alternative, Defendant, under a duty to speak, suppressed material

7   facts from Plaintiff and the Class regarding the presence of toxins in the Product, in

8   violation of advertising laws and Proposition 65.

9       57.    As a result of Defendant's fraudulent conduct, Plaintiff and Class

10  members paid monies to Defendant to which it was not entitled, and have suffered

11  monetary damages in an amount to be proven at trial.

12      58.    The aforementioned conduct of Defendant was an intentional

13  misrepresentation, omission, deceit, or concealment of a material fact or facts known

14  to Defendant with the intention of Defendant to deprive Plaintiff and Class members

15  of property or legal rights or otherwise cause injury, and was despicable conduct that

16  subjected Plaintiff and Class members to a cruel and unjust hardship in conscious

17  disregard of their rights, so as to justify an award of exemplary and punitive damages.

18                          **SIXTH CAUSE OF ACTION**

19                        **(Negligent Misrepresentation)**

20      59.    Plaintiff, on behalf of herself and on behalf of all others similarly

21  situated, realleges and incorporates herein by reference each of the foregoing

22  paragraphs.

23      60.    During the relevant time period, Defendant made representations to

24  Plaintiff and Class members that the Product was safe for consumption which was

25  contained in Defendant's advertising, on its website, and on the labels of the Product.

26  The representations that were made to Class members were substantially similar for

27  the purposes of this litigation.

28

61.    However, Defendant's representations were false in that Pepsi One contains the toxic chemical 4-MeI at levels in excess of those listed in Proposition 65.

62.    When Defendant made the representation set forth above, it knew or should have known them to be false, and made the representations with the intention to deceive and defraud Plaintiff and Class members to induce them to act in reliance upon those representations, or with the expectation that they would so act.

63.    Plaintiff and Class members, at the time the representations were made by Defendant, and at the time they took the actions herein alleged, were ignorant of the falsity of the representations and believed them to be true.  In reliance on these representations, Plaintiff and Class members were induced to purchase the Product and consume it.  Had Plaintiff and Class members known the actual facts, they would not have taken such action. Reliance on Defendant's representations was justified because it was offering Pepsi One through reputable retail establishments throughout the Country.  Plaintiff and Class members had no reason to believe that Defendant would act otherwise than as represented in its advertising.

64.    In the alternative, Defendant, under a duty to speak, suppressed material facts from Plaintiff and the Class regarding the presence of toxins in the Product in violation of advertising laws and other State regulations.

65.    As a result of Defendant's fraudulent conduct, Plaintiff and Class members paid monies to Defendant to which they were not entitled, and have suffered monetary damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

66.    Plaintiff, on behalf of herself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

67.     By its wrongful acts and omissions, Defendant was unjustly enriched at the expense of Plaintiff and Class members, who did not receive the goods to which they were entitled, namely a product that did not violate Proposition 65 by containing excessive levels of 4-MeI, for the payments made to Defendant, and thus Plaintiff and the Class was unjustly deprived.

68.     It would be inequitable and unconscionable for Defendant to retain the profit, benefit and/or other compensation it obtained from its deceptive, misleading, and unlawful conduct alleged herein.

69.     Plaintiff and Class members seek restitution from Defendant, and seek an Order from the Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## EIGHTH CAUSE OF ACTION

### (Breach of Express Warranty)

70.     Plaintiff, on behalf of herself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

71.     Defendant made an express warranty and/or approved the use of the express warranty to Plaintiff and members of the Class that Pepsi One was safe for consumption and beneficial to those who are health conscious.

72.     This promise regarding the nature of the Product marketed by Defendant specifically related to the goods being purchased and became the basis of the bargain.

73.     Plaintiff and the Class purchased the Product based on the belief that they conformed to the express warranties that were made on the products' packaging.

74.     Defendant breached the express warranty made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranty made. As a result, Plaintiff and the members of the Class suffered injury, and deserve to be compensated for the damages they suffered.

**CLASS ACTION COMPLAINT**

75.    Plaintiff and the members of the Class paid money for the Product because it was represented as being safe and low in calories which targeted individuals concerned about caloric intake.  However, Plaintiff and the members of the Class obtained a Product which contained excessive levels of a toxic chemical, 4-MeI.  If Plaintiff and other members of the Class had known of the true nature of Pepsi One, they would not have purchased the Product.

76.    Plaintiff and the Class are therefore entitled to recover damages of the amounts they paid for the Product.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests on behalf of herself and other members of the Class, for judgment against Defendant as follows:

1.    For preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with Defendant, from engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent business practices alleged above and that may yet be discovered in the prosecution of this action;

2.    For certification of the proposed Class, appointment of Plaintiff as the Class Representative and appointment of Plaintiff's counsel as Class Counsel to represent the Class;

3.    For damages, restitution and disgorgement of all money or property wrongfully obtained by Defendant by means of their herein-alleged unlawful, unfair, and fraudulent business practices;

4.    Recovery of the amounts by which Defendant has been unjustly enriched;

5.    For an accounting by Defendant for any and all profits derived by Defendant from their herein-alleged unlawful, unfair and/or fraudulent conduct and/or business practices;

**CLASS ACTION COMPLAINT**

6.     For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California Code of Civil Procedure § 1021.5 and the common law private attorney general doctrine; and

7.     For costs of suit; and for such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 4, 2014                    **GLANCY BINKOW & GOLDBERG LLP**


By:    _s/Marc L. Godino_
              Marc L. Godino

Lionel Z. Glancy
Michael M. Goldberg
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

Vahn Alexander
**THE ALEXANDER FIRM P.C.**
**A PROFESSIONAL LAW CORP.**
1875 Century Park East, Suite 700
Los Angeles, CA  90067
Telephone: (310) 407-5335
Facsimile: (310) 407-5338
E-mail: info@alexanderfirmpc.com


*Attorneys for Plaintiff Kelly Ree*

## <u>AFFIDAVIT OF MARC L. GODINO</u>

I, Marc L. Godino, declare as follows:

1.    I am a partner with the law firm of Glancy Binkow & Goldberg LLP, counsel for plaintiff Kelly Ree in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This affidavit is made pursuant to California Civil Code § 1780(d) of the Consumers Legal Remedies Act.  I make this affidavit based on my research of public records and also upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.    Based on my research of public records and personal knowledge, defendant PepsiCo, Inc. does business within this County, as alleged in the accompanying Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and State of California this 4th day of March 2014, in Los Angeles, California that the foregoing is true and correct.

*s/Marc L. Godino*
Marc L. Godino

**CLASS ACTION COMPLAINT**